UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

ANNIE R. THOMAS                                               Case No. 04-13908-MAM-13

Debtor

**ORDER SUSTAINING OBJECTION TO CONFIRMATION**

Britt B. Griggs, Attorney for Rent-A-Center, Inc., Montgomery, AL
David Weston, Attorney for Debtor, Montgomery, AL

This case is before the Court on an objection by Rent-A-Center, Inc., to the confirmation of debtor's chapter 13 bankruptcy plan. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has authority to enter a final order. For the reasons indicated below, the Court sustains RAC's objection to confirmation.

**FACTS**

Annie R. Thomas, entered into two rental-purchase agreements with RAC. The first agreement was executed by Thomas on June 17, 2004. This agreement pertained to the rental of a 27-inch television. Thomas has made two payments on that account. The first payment, in the amount of $20.49, was made on the date of the agreement. The second payment of $20.51 was made on July 6, 2004. RAC is owed a balance on this account of $396.19.

Thomas entered into a second rental-purchase agreement with RAC on July 7, 2004, for the rental of a computer. Thomas made a payment of $45.42 on the date the agreement was signed and has not paid anything further on this account. RAC is owed a balance of $1576.74 on the second account.

Thomas filed a Chapter 13 bankruptcy petition on July 7, 2004. The filing date was the same date the debtor had executed the second rental-purchase agreement with RAC and was within three weeks of the debtor's execution of the first rental-purchase agreement with RAC. The debtor's initial Chapter 13 plan did not provide for any payment of these two debts. The plan has now been amended to provide for the two RAC debts to be paid through the plan. The amended plan lists the value of the collateral securing these debts as $600.00 and proposes to pay interest at 7%. The debtor contends that the RAC agreements were purchase contracts and as such, she should be able to pay them through her Chapter 13 plan. If allowed to pay her debts to RAC through the plan, the debtor has indicated she would be willing treat the RAC claims as fully secured, thereby increasing the collateral value to the amount owed on the rental-purchase agreements. RAC, on the other hand, contends that these rental purchase agreements are rental agreements, which must be paid in full by the debtor outside the plan.

The two rental purchase agreements are virtually identical with only the description of the property, term, and payment amount varying in each one. The payment terms describe the first week's payment as the "initial payment;" payments received thereafter are described as "renewal payments" because the "lessee" is not required to renew the agreement beyond the first term. The agreements state that RAC is responsible for making all normal repairs during the term of the agreements. They further state that they are rental transactions even though they give the "lessee" the option of acquiring ownership by making a certain number of payments.

**LAW**

At issue in this case is whether the two agreements between Thomas and RAC created a lease which may be assumed or rejected, or whether they created security interests in the collateral which allows Thomas to treat RAC as an unsecured creditor and pay RAC through her

plan. Whether an agreement creates a lease or security interest is governed by state law. *See Butner v. United States*, 440 U.S. 48 (1978).

The Court has held under a previous version of Alabama's Uniform Commercial Code (UCC) that rent-to-own agreements qualify as executory contracts under the Bankruptcy Code. *In re Copeland*, Case No. 95-12487- MAM-13 (Bankr. S.D. Ala. 1996). The *Copeland* decision closely followed the result reached in *In re Trusty*, 189 B.R. 977 (Bankr. N.D. Ala. 1995). Although the Alabama legislature has enacted a new version of the UCC, the classification of rent-to-own contracts as executory contracts under the Bankruptcy Code is unchanged.

The Court still agrees with the *Trusty* decision, holding that a rent-to-own contract is not a pure "lease." It is a "hybrid commercial device created by the Alabama Legislature for a distinctive exchange of particular types of property." *Trusty*, 189 B.R. at 981. The Court will therefore speak in terms of "executory contracts" and not "leases" when dealing with the agreements in the bankruptcy context. The rent-to-own agreements are executory contracts and are treated as that under the Bankruptcy Code. *Id.* However, state law deems rent-to-own contracts as leases so the Court will use that term when discussing the state law implications of the rent-to-own agreements.

There are two different Alabama state statutes purporting to regulate the transactions in this case. The statutes are Ala. Code § 8-25-1 and Ala. Code § 7-1-201(37). The Court has previously held that Ala. Code § 7-1-201(37), governs the determination under state law of whether the transactions at issue in this case created leases or security interests. *In re Grayson*, Case No. 02-15985-MAM-13 (S.D. Ala. 2002). However, the outcome would be the same under either statute. *Id.*

The relevant portion of Ala. Code § 7-1-201(37) states:

b. Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

1. the original term of the lease is equal to or greater than the remaining economic life of the goods, or

2. the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods, or

3. the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

4. the lessee has an option to become the owner of the goods for no additional consideration or nominal additional
consideration upon compliance with the lease agreement.

c. A transaction does not create a security interest merely because it provides that:

1. the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

2. the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

3. the lessee has an option to renew the lease or to become the owner of the goods,

4. the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

5. the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the
reasonably predictable fair market value of the goods at the time the option is to be performed.

Ala. Code § 7-1-201(37).

Under the agreements entered into with RAC, if Thomas made all the weekly payments under the agreements, she would obtain ownership of the property. However, Thomas was not required to renew the agreements beyond the first week. She could terminate the agreements

without penalty by voluntarily surrendering or returning the merchandise in good condition at the end of any one week period.

Thomas's agreements with RAC provide that she has the option to renew the "lease" and to become owner of the goods. She also has the option to terminate the agreements at the end of any weekly term. Thomas's agreements with RAC do not fall under the explicit definition of what does constitute the creation of a "security interest" under Ala. Code § 7-1-201. But, her agreements do fall under the explicit definition of what does not constitute the creation of a "security interest." The Court finds that there is nothing in Thomas's agreements with RAC to indicate that security interests were created. Accordingly, the Court holds that the agreements with RAC created true leases which are executory contracts under the Bankruptcy Code. 11 U.S.C. § 365. Thomas must now assume the leases and pay RAC directly, or she must reject the leases in her chapter 13 plan.

It is ORDERED that Rent-A-Center, Inc.'s objection to the confirmation is SUSTAINED because the two agreements between debtor and Rent-A-Center were leases under state law which must be assumed or rejected as executory contracts under her plan.

It is FURTHER ORDERED that Annie R. Thomas shall file an amended plan by November 5, 2004, and a hearing on the confirmation of the amended plan will be held on November 10, 2004, at 9:30 a.m. in the U.S. Courthouse, Selma, Alabama.

Dated:   October 28, 2004

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE